Christopher Kao (SBN 237716)
  christopher.kao@pillsburylaw.com
Brock S. Weber (SBN 261383)
  brock.weber@pillsburylaw.com
Surui Qu (SBN 332105)
  surui.qu@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111
Tel.:   415.983.1000
Fax:   415.983.1200

*Attorneys for Defendants*
*Seclore, Inc. and Digify, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| INFORMATIVE TECHNOLOGY SYSTEMS, LLC, <br><br>                     Plaintiff, <br><br>     v. <br><br> SECLORE, INC., <br><br>                     Defendant. | Case No. 21-cv-08504-YGR <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)** <br><br> Date:        February 22, 2022 <br> Time:        2:00 P.M. <br> Courtroom:  Courtroom 1, 4th Floor <br> Judge:     Hon. Yvonne Gonzalez Rogers |
| INFORMATIVE TECHNOLOGY SYSTEMS, LLC, <br><br>                     Plaintiff, <br><br>     v. <br><br> DIGIFY, INC., <br><br>                     Defendant. | Case No. 21-cv-08506-YGR <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)** <br><br> Date:        February 22, 2022 <br> Time:        2:00 P.M. <br> Courtroom:  Courtroom 1, 4th Floor <br> Judge:     Hon. Yvonne Gonzalez Rogers |

1

## NOTICE OF MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that, on February 22, 2022, at 2:00 p.m., or as soon thereafter as

4

the motion may be heard, in the courtroom of the Honorable Yvonne Gonzalez Rogers, located at

5

the United States District Court for the Northern District of California, Ronald V. Dellums Federal

6

Building, Oakland in Courtroom 1, 4th Floor, Defendants Seclore, Inc. ("Seclore") and Digify, Inc.

7

("Digify") will and hereby do move for dismissal with prejudice of Informative Technology

8

Systems, LLC's ("Plaintiff" or "ITS") Complaint (Dkt. No. 1) pursuant to Federal Rule of Civil

9

Procedure 12(b)(6) on the grounds that ITS's Complaint fails to state a claim upon which relief can

10

be granted, because asserted Claim 12 of U.S. Patent No. 8,156,151 (the "'151 Patent") is invalid

11

under 35 U.S.C. § 101.

12

This Motion is based upon this Notice of Motion, the following Memorandum of Points and

13

Authorities, and the pleadings and papers filed herein.

14

Dated:  January 13, 2022                    **PILLSBURY WINTHROP SHAW PITTMAN LLP**

15

16

*/s/ Christopher Kao*
 Christopher Kao (SBN 237716)

17

18

*Attorneys for Defendants*
*Seclore, Inc. and Digify, Inc.*

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF RELEVANT FACTS ........................................................... 2

    A.   ITS and Its Litigation Campaign......................................................... 2

    B.   The Patent-in-Suit. .............................................................................. 3

    C.   The Asserted Claims. .......................................................................... 6

III. LEGAL STANDARDS........................................................................................ 7

    A.   Motion to Dismiss. .............................................................................. 7

    B.   Patent Eligibility Is a Threshold Legal Issue that May Be Decided on a
Rule 12(b)(6) Motion to Dismiss. ...................................................... 7

    C.   Patent-Eligibility Under 35 U.S.C. § 101 .......................................... 8

IV.  ARGUMENT ..................................................................................................... 10

    A.   The Asserted Claim of the '151 Patent Is Invalid Under 35 U.S.C. 35 § 101. ...... 10

        1.   The Asserted Claim of the '151 Patent Fails *Alice* Step One
Because It is Directed to an Abstract Idea. ................................. 10

        2.   The Asserted Claim of the '151 Patent Lacks Any
"Inventive Concept" as Required Under *Alice* Step Two. ......... 15

        3.   No Questions Of Fact Preclude Dismissal Under Section 101. ... 17

    B.   The Complaints Are Devoid of Factual Support.................................. 18

V.   CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc*.,
  882 F.3d 1121 (Fed. Cir. 2018)................................................................... 7, 8, 17

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)...................................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................... 7, 19, 20

*Ass'n of Molecular Pathology v. Myriad Genetics, Inc.*,
  133 S. Ct. 2107 (2013) ........................................................................................ 8

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
  915 F.3d 743 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 855 (2020) ........................... 18

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)............................................................................ 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................... 7, 19, 20

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)..................................................................... 7, 17

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ........................................................................................... 7

*Blue Spike, LLC v. Google Inc.*,
  No. 14-CV-01650, 2015 WL 5260506 (N.D. Cal. Sept. 8, 2015) ............................... 16

*Bridge & Post Inc. v. Verizon Communications, Inc.*,
  319 F. Supp. 3d 818 (E.D. Va. 2018), *aff'd*, 778 F. App'x 882 (Fed. Cir. 2019)........................ 12

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014)............................................................................ 9

*Chapterhouse, LLC v. Shopify, Inc.*,
  No. 2:18-CV-00300, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018).......................... 19

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)............................................................. 8, 9, 14, 18

*Cisco Sys., Inc. v. Uniloc USA, Inc.*,
  No. 18-cv-04991-SI, 2019 WL 1995334 (N.D. Cal. May 6, 2019) ........................... 8

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
   859 F.3d 1352 (Fed. Cir. 2017) ................................................................. 8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ........................................................... 8, 15

*Elec. Power Group, LLC v. Alston S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ........................................................... 9, 11

*Enfish, LLC v. Microsoft Corp.*,
   Case No. 2:12-cv-07360, 2014 WL 5661456 (C.D. Cal. Nov. 3, 2014) .................... 10

*Ericsson Inc. v. TCL Communication Technology Holdings Limited*,
   955 F.3d 1317 (Fed. Cir. 2020) .............................................................. 11

*Genetic Techs. Ltd. v. Merial L.L.C.*,
   818 F.3d 1369 (Fed. Cir. 2016) ............................................................... 7

*In re TLI Commc'ns, LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ............................................................... 17

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
   850 F.3d 1315 (Fed. Cir. 2017) ............................................................... 9

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ............................................................... 8

*Kim v. Green Tea Ideas, Inc.*,
   2018 WL 11729 (E.D. Va. 2018) ............................................................. 18

*Mosaic Brands, Inc. v. The Ridge Wallet LLC*,
   2020 WL 5640233 (C.D. Cal. 2020) ......................................................... 19

*MyMail, Ltd. v. ooVoo, LLC*,
   2020 WL 2219036 (N.D. Cal. May 7, 2020), *aff'd* 2021 WL 3671364
   (Fed. Cir. August 19, 2021) .................................................................... 8

*North Star Innovations Inc. v. Kingston Tech. Co., Inc.*,
   No. SA CV 17-01833, 2018 WL 3155258 (C.D. Cal. May 7, 2018) .......................... 7

*Open Text S.A. v. Box, Inc.*,
   2015 WL 269036 (N.D. Cal., Jan. 20, 2015) ................................................ 10

*OpenTV, Inc. v. Apple Inc.*,
   No. 5:15-cv-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) ................... 8, 12

*PersonalWeb Technologies LLC v. Google LLC*,
   2020 WL 520618 (N.D. Cal. 2020), *aff'd*, 8 F.4th 1310 (Fed. Cir. 2021) .......... *passim*

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
  696 F. App'x 1014 (Fed. Cir. 2017) ........................................................................ 12

*Protegrity USA, Inc. v. Netskope, Inc.*,
  2015 WL 6126599 (N.D. Cal., Oct. 19, 2015) .......................................................... 11

*PUREPREDICTIVE, Inc. v. H2O.AI, Inc.*,
  No. 17-cv-03049-WHO, 2017 WL 3721480 (N.D. Cal. Aug. 29, 2017),
  *aff'd*, 741 F. App'x 802 (Fed. Cir. 2018) .................................................................. 8

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017) .............................................................................. 15

*RingCentral, Inc. v. Dialpad, Inc.*,
  372 F. Supp. 3d 988 (N.D. Cal. 2019) ...................................................................... 8

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*,
  858 F.3d 1383 (Fed. Cir. 2017) ................................................................................ 2

*Rothschild Dig. Confirmation, LLC v. CompanyCam, Inc.*,
  494 F. Supp. 3d 263 (D. Del. 2020) .......................................................................... 3

*SAP Am., Inc. v. Investpic, LLC*,
  898 F. 3d 1161 (Fed. Cir. 2018) ........................................................................... 7, 8

*Smartflash LLC v. Apple Inc.*,
  680 F. App'x 977 (Fed. Cir. 2017) .......................................................................... 12

*Supercell Oy v. GREE, Inc.*,
  2018 WL 1609584 (N.D. Cal. Apr. 3, 2018) (Gonzalez Rogers, J.),
  *aff'd* 797 F. App'x 536 (Fed. Cir. 2020) ...................................................... 8, 14, 17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) .............................................................................. 14

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ................................................................................. 9

*West View Research, LLC v. Bayerische Motoren Werke AG*,
  226 F. Supp. 3d 1071 (S.D. Cal. 2016) .................................................................... 12

*XimpleWare, Inc. v. Versata Software, Inc.*,
  No. 13-5161, 2014 WL 6687219 (N.D. Cal. Nov. 25, 2014) ...................................... 7

## Statutes

35 U.S.C. § 101 ........................................................................................... *passim*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

Defendants Seclore, Inc. and Digify, Inc. (together, "Defendants") respectfully request that

4

this Court dismiss Plaintiff Informative Technology Systems, LLC's ("Plaintiff" or "ITS")

5

Complaints (Dkt. No. 1) under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff only asserts one

6

claim of U.S. Patent No. 8,156,151 (the "'151 Patent" or "Patent-in-Suit") against Defendants in the

7

respective Complaints—Claim 12.  *See* Dkt. No. 1 ("Compl.," Ex. B).  Claim 12 of the '151 Patent,

8

however, is invalid under 35 U.S.C. § 101 because it does not recite patent-eligible subject matter.

9

Abstract ideas with no inventive concept are not eligible for patent protection under Section

10

101 as a matter of law.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  The asserted

11

claim of the '151 Patent does not present a close question under Section 101, as it plainly fails the

12

*Alice* test for eligibility.

13

Specifically, Claim 12 is directed to the abstract idea of controlling access to information

14

using unique identifiers—an identifier for the information to be accessed and an identifier for the

15

person seeking access to the information.  This is an age-old concept.  Libraries have long used

16

index systems with unique identifiers assigned to hardcopy resources (books, magazine, or the like)

17

and membership management systems to assign another asset of unique identifiers to patrons in

18

order to track and control access to the resources.  Governments and corporations have likewise

19

restricted access to classified or confidential information by allowing only certain individuals

20

within the organizations (identified by unique employee numbers, for example) to have access to

21

certain documents (identified by unique document numbers).

22

The asserted claim recites nothing more than this patent-ineligible subject matter.  Indeed,

23

the specification of the '151 Patent makes clear that the claimed invention is implemented with

24

<u>conventional</u> computer components using <u>conventional</u> computer technology.  Asserted Claim 12

25

therefore does not recite anything "significantly more" than the abstract idea of idea of controlling

26

access to information resources using unique identifiers and, as such, does contain an inventive

27

concept sufficient to save it under Section 101.  Numerous courts, including this Court and the

28

Federal Circuit, have consistently held similar claims to be ineligible for patenting under Section

101.  *See, e.g.*, *PersonalWeb Technologies LLC v. Google LLC*, 2020 WL 520618 (N.D. Cal. 2020), *aff'd*, 8 F.4th 1310 (Fed. Cir. 2021) (granting judgment on the pleadings that claims directed to "using a known, content-based identifier to control access to data" are invalid under Section 101).

Accordingly, Defendants request that the Court find asserted Claim 12 of the '151 Patent invalid under 35 U.S.C. § 101 and grant Defendants' motion to dismiss under Rule 12(b)(6).

In the alternative, to the extent the Court does not dismiss the case based on patent ineligibility (which it should), Defendants respectfully request that the Court dismiss the Complaints because they fail sufficiently to plead infringement of each limitation of Claim 12.  The claim charts attached to the respective Complaints (as Exhibit B) merely recite the claim language and rely on images of Defendants' websites without giving any explanation or description of how each limitation is met.  As such, the Complaint is deficient and should be dismissed for that reason as well.

## II.     STATEMENT OF RELEVANT FACTS

### A.     ITS and Its Litigation Campaign.

ITS purports to be the current assignee of U.S. Patent No. 8,156,151 (the "'151 Patent" or "Patent-in-Suit").  ITS is a non-practicing entity that is based in a virtual office space.  *See* Declaration of Christopher Kao in Support of Defendants' Motion to Dismiss ("Kao Decl."), Ex. 1. It was just formed on June 8, 2021, and the Patent-in-Suit was assigned to ITS a few weeks later. *Id.* Exs. 2-3.  Since then, ITS has filed five separate patent infringement actions asserting the Patent-in-Suit, including these two filed on November 2, 2021.

ITS is controlled by Patent Asset Management, LLC (*see* Dkt. No. 4), whose Chief Executive Officer and founder is Leigh M. Rothschild, a prolific and notorious patent troll.  Kao Decl., Exs. 4-5.  Rothschild, through numerous shell companies including ITS, has filed thousands of patent infringement lawsuits across the country of dubious merit, and has previously been sanctioned by the Federal Circuit for bringing vexatious litigation.  *See, e.g.*, *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383 (Fed. Cir. 2017) (reversing the district court's denial of attorney fees, finding the Rothschild-controlled patentee showed a pattern of litigation abuses); *Rothschild Dig. Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d

263 (D. Del. 2020) (granting a motion to declare exceptional case under 35 U.S.C. § 285 and for an award of attorneys' fees, finding that "it [was] clear—at the outset or otherwise—that [the Rothschild patent would] fall under § 101" and that the Rothschild-controlled patentee showed a "troubling" pattern of litigation conduct).

### B. The Patent-in-Suit.

The '151 Patent was filed on April 14, 2010, and issued on April 10, 2012, all before the Supreme Court's decision in *Alice*. The '151 Patent is a continuation of Application No. 10/470,352, filed on January 25, 2002, and as such, the '151 Patent will expire on January 25, 2022, prior to the hearing on this Motion.

The '151 Patent states that it relates to "track[ing] information access over a communications network." '151 Patent at Abstract. The patent does not, however, describe any new technology for tracking or controlling information access. Instead, the patent acknowledges in its discussion of "Background" technology that controlling access to information was already known and conventional using Digital Rights Management ("DRM") systems: "Current DRM systems include languages for describing the terms and conditions for use of an asset, tracking asset usage by enforcing controlled environments or encoded asset manifestations, and closed architectures for the overall management of the digital rights," which can include "digital rights to the physical manifestation of a work (e.g., a textbook)." *Id*. at 4:18-30. The '151 Patent also discloses that access is controlled using "conventional cryptographic techniques such as … digital signatures, enveloping, password access protection, public key management, and/or the like." *Id*. at 11:38-43.

In the "Background" section of the specification, the '151 Patent also acknowledges that identifying resources and users with unique identifiers was known and conventional. In particular, the patent describes that "[o]ne common type of Handle is known as a Digital Object Identifier (DOI)." *Id*. at 3:62-64; *see generally id*. at 3:37-4:17. Conventional DOI handle systems associate digital content and users with identifiers. *Id.* Abstract ("Both content and people are registered with [the] Digital Object Identifier (DOI) handle system."), 22:33-54. The identifier associated with an information resource is based on the content of the resource as opposed to specific network location. *See id.* at 3:37-4:17.

The '151 Patent refers to a content-based information identifier as a "Universal Name Identifier (UNI)," "Digital Object Identifiers (DOI)," or "unique, persistently accessible, and universal name identifier (UPUNI)," which are described in the "Background" section as known identifiers in the field or extensions of known identifiers. *See id.* at 3:49-59; *id.* at Claims 1, 2, 12. The identifier assigned to a person, user, or entity is "associated with the user's person, the user's device representing his or her person, and/or the like." *Id.* at 22:45-47. The patent refers to a user identifier as a "personal DOI," or "entity information (EREI)" or "unique, persistently accessible, and universal name identifier that represents the entity (E-UPUNI)." *See, e.g.*, *id.* at 22:44-47; *id.* at Claims 1, 2, 12. The '151 Patent does not, however, describe any new technology for generating or managing such identifiers or providing access rights.

Instead, the '151 Patent acknowledges that the handle system is intended for use with "common computer systems" that comprise "conventional computer systemization" connected to "conventional computer system storage." *Id.* at 6:25-29, 8:22-40, Figure 1. The patent states that the database for storing and managing identifiers and security information registered with the handle system is a "conventional" database or database "implemented using various standard data-structures." *Id.* at 10:45-47, 10:59-61.

In response to a user's request to access an information resource, the specification describes using the well-known public key infrastructure (PKI) authentication system (e.g., a conventional DRM implementation, as discussed above) for verifying access rights using the identifiers and security information registered with the handle system.

The method described with reference to Figure 17 illustrates the purported invention. In particular, Figure 17 shows a process for "a public key infrastructure for content access for information tracking":

(1) the system retrieves the content identifier (DOI) for the information resource (the "content") to be accessed (1702),

(2) determines if the access to the content is restricted (1703),

(3) retrieves and/or creates a personal identifier (DOI) for the user seeking access to the content (1706-1708),

1    (4)    submits an access request for the restricted content (1709),

2    (5)    redirects to a rights clearinghouse (R.C.) in a PKI system (1710-1711), which

3           verifies the user's access rights (1712), and, if verified,

4    (6)    provides the verified user access to the restricted content (1713-1714).

5    *See id*. at 25:36-26:51.



Figure 17

**C.     The Asserted Claims.**

The Complaint asserts infringement of Claim 12 of the '151 Patent.  Compl., ¶¶ 13-15, Ex. B.  Asserted Claim 12 recites a series of steps for "<u>effecting</u>" desired results without providing any technical detail regarding how to actually achieve those results:

> 12. [pre] A method of using at least one computer to effect access to information, comprising:
>
> [a] effecting determination of if information an entity desires to access (desired information) on the entity's access device (entity device) has an unique, persistently accessible, and universal name identifier (UPUNI) embedded within the desired information;
>
> [b] effecting determination of if the desired information is inaccessible;
>
> [c] effecting determination of if there exists an UPUNI that represents the entity (E-UPUNI);
>
> [d] effecting the generation of the E-UPUNI, if the entity is un-represented by an UPUNI;
>
> [e] effecting the resolution of the entity device to the desired information's UPUNI (DI-UPUNI);
>
> [f] effecting the provision of entity verification information;
>
> [g] effecting verification of the entity's identity and access rights to the desired content with the provided entity verification information (entity verification);
>
> [h] effecting provision of access credentials, if the entity's identity and access rights to the desired content are verified.

Claim 12 tracks the process described in Figure 17, involving the following steps: (1) limitation [a] involves determining the content identifier ("UPUNI" or "DI-UPUNI") of an identified information resource ("desired information") (1702); (2) limitation [b] involves determining if the access to the desired information is restricted or not (1703); (3) limitations [c] through [d] involve identifying and/or naming the user ("entity") requesting the information (1706-1708); (4) limitations [e] through [f] involve obtaining the user's security information ("verification information") (1709-1711); (5) limitation [g] involves verifying the user's access rights to the desired information (1712); and (6) limitation [h] involves granting the verified user access to the desired information (1713-1714).

In sum, Claim 12 recites nothing more than controlling access to an information resource using a content identifier and user identifier.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss.

A Complaint may be dismissed for failure to state a claim on which relief can be granted for one of two reasons: (1) the lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also XimpleWare, Inc. v. Versata Software, Inc.*, No. 13-5161, 2014 WL 6687219, at *11 (N.D. Cal. Nov. 25, 2014).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In a patent infringement action, "[t]o adequately allege direct infringement, a plaintiff must allege facts sufficient to permit the Court to infer that the accused product infringes <u>each</u> element of at least one claim."  *North Star Innovations Inc. v. Kingston Tech. Co., Inc.*, No. SA CV 17-01833, 2018 WL 3155258, at *1 (C.D. Cal. May 7, 2018), report and recommendation adopted, 2018 WL 3155708 (C.D. Cal. June 25, 2018).

### B.   Patent Eligibility Is a Threshold Legal Issue that May Be Decided on a Rule 12(b)(6) Motion to Dismiss.

Patent eligibility under 35 U.S.C. § 101 is a "threshold test" that should be answered early in a case.  *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  Whether a claim recites patent-eligible matter under Section 101 is a question of law, which may involve underlying facts.  *See Berkheimer v. HP Inc*., 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).  This question is frequently resolved on the pleadings "where the undisputed facts . . . require a holding of ineligibility under the substantive standards of law."  *SAP Am., Inc. v. Investpic, LLC*, 898 F. 3d 1161, 1166 (Fed. Cir. 2018).

In fact, the Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."  *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *see also PersonalWeb Techs.*, 8 F.4th at 1312-13 (affirming dismissal on the pleadings of patent claims "for using content-based identifiers to control access to data"); *ChargePoint, Inc. v. SemaConnect, Inc*., 920 F.3d 759, 773-

75 (Fed. Cir. 2019) (affirming dismissal on the pleadings of patent claims concerning remotely controlling charging stations over a network); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced."); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348–49 (Fed. Cir. 2015) (affirming dismissal under § 101 where claims directed to abstract idea of "retaining information in the navigation of online forms"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (affirming dismissal where claims merely recited use of generic scanner and computer technology to "perform well-understood, routine, and conventional activities commonly used in industry"). This is because patent eligibility under Section 101 is a question of law, and resolution is appropriate where, as in this case, there are no factual allegations in the Complaint that create a contested underlying issue of material fact. *See Aatrix Software*, 882 F.3d at 1125; *SAP Amer.*, 898 F.3d at 1166. In this situation, the issue may be decided on undisputed facts from the claims, specification, and prosecution history. *See id.*

Consistent with this precedent, courts in the Northern District of California have routinely granted motions to dismiss on the grounds that the asserted patents are invalid under Section 101. *See, e.g.*, *Supercell Oy v. GREE, Inc.*, 2018 WL 1609584 (N.D. Cal. Apr. 3, 2018) (Gonzalez Rogers, J.), *aff'd* 797 F. App'x 536 (Fed. Cir. 2020); *MyMail, Ltd. v. ooVoo, LLC*, 2020 WL 2219036, at *22 (N.D. Cal. May 7, 2020), *aff'd* 2021 WL 3671364 (Fed. Cir. August 19, 2021); *PersonalWeb Techs.*, 2020 WL 520618 (N.D. Cal. 2020), *aff'd*, 8 F.4th 1310 (Fed. Cir. 2021); *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 992-93 (N.D. Cal. 2019); *Cisco Sys., Inc. v. Uniloc USA, Inc.*, No. 18-cv-04991-SI, 2019 WL 1995334, at *12 (N.D. Cal. May 6, 2019); *PUREPREDICTIVE, Inc. v. H2O.AI, Inc.*, No. 17-cv-03049-WHO, 2017 WL 3721480, at *7 (N.D. Cal. Aug. 29, 2017), *aff'd*, 741 F. App'x 802 (Fed. Cir. 2018); *OpenTV, Inc. v. Apple Inc.*, No. 5:15-cv-02008-EJD, 2016 WL 344845, at *10 (N.D. Cal. Jan. 28, 2016).

### C.   Patent-Eligibility Under 35 U.S.C. § 101

"[A]bstract ideas are not patentable" under Section 101. *Alice*, 573 U.S. at 216 (quoting *Ass'n of Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The

1  Supreme Court's *Alice* decision sets forth a two-step test to determine whether a patent is invalid

2  for claiming abstract ideas.  *See id.* at 217.

3  　　At *Alice* step one, a court determines whether a claim's character as a whole is directed to an

4  abstract idea.  *Elec. Power Group, LLC v. Alston S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  If the

5  claims are directed to an abstract idea, then the Court must proceed to *Alice* step two to determine

6  whether the claims include an "inventive concept" that is "significantly more" than the abstract

7  idea, "sufficient to transform the claimed abstract idea into a patent-eligible application."  *Alice*,

8  573 U.S. at 221.  To avoid invalidation under this second step, the claims "must include additional

9  features" that "must be more than well-understood, routine, conventional activity."  *Ultramercial,*

10  *Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citations and internal quotation marks

11  omitted); *see also Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1331 (Fed. Cir.

12  2017) (requiring claims do more than "simply recite[] that the abstract idea will be implemented

13  using the conventional components and functions generic to" a given technological environment).

14  As such, the asserted patent claim must "describe[] *how* its particular arrangement of elements is a

15  technical improvement over prior art ways of" accomplishing the abstract ideas identified in step

16  one of the *Alice* framework.  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d

17  1341, 1350 (Fed. Cir. 2016) (emphasis added).

18  　　Accordingly, simply using generic technology does not save a claim under step two of the

19  *Alice* inquiry, even if that technology is embodied in a tangible form.  For example, "the mere

20  recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-

21  eligible invention."  *Alice*, 573 U.S. at 223; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d

22  1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a

23  network—with no further specification—is not even arguably inventive.").  Nor can the "abstract

24  idea itself . . . supply the inventive concept that renders the invention significantly more than that

25  ineligible concept."  *ChargePoint*, 920 F.3d at 774 (Fed. Cir. 2019) (affirming dismissal under

26  Rule 12(b)(6)).

27

28

## IV.   ARGUMENT

The asserted claim of the '151 Patent cannot survive the scrutiny that *Alice* demands.  Claim 12 is directed to the abstract idea of controlling access to information using unique identifiers.  Moreover, the claim lacks an "inventive concept" sufficient to transform this abstract idea into patent-eligible subject matter because Claim 12 simply recites using a generic "computer" to "effect" the abstract method steps.  Asserted Claim 12 is therefore invalid as a matter of law under Section 101 and the Court should grant Defendants' motion and dismiss the Complaints with prejudice.

### A.   The Asserted Claim of the '151 Patent Is Invalid Under 35 U.S.C. § 101.

#### 1.   The Asserted Claim of the '151 Patent Fails *Alice* Step One Because It is Directed to an Abstract Idea.

The first step of the *Alice* framework asks whether the claim is "directed to" an abstract idea.  *Alice*, 573 U.S. at 219.  The Court must "identify the purpose of the claim—in other words, determine what the claimed invention is trying to achieve—and ask whether that purpose is abstract."  *Enfish, LLC v. Microsoft Corp.*, Case No. 2:12-cv-07360, 2014 WL 5661456, at *4 (C.D. Cal. Nov. 3, 2014); *see also Open Text S.A. v. Box, Inc.*, 2015 WL 269036, at *2 (N.D. Cal., Jan. 20, 2015) (court must "distill[] the gist of the claim").  This inquiry should focus on the claim's purpose "at a reasonably high level of generality."  *Enfish*, 2014 WL 5661456, at *4; *see also Open Text*, 2015 WL 269036, at *1 (for first part of test, distinguishing between the "core concept" of the claim and its "implementation").

Asserted Claim 12 of the '151 Patent is drawn to the abstract idea of controlling access to information using unique identifiers—*i.e.*, using content and user identifiers to determine whether to provide access to otherwise restricted information.  *See* Section II.C, *supra*.  That this is the focus of Claim 12 is confirmed in the claim language itself, as well as in the specification of the '151 Patent.  As discussed above, Claim 12 recites the steps of (1) determining the unique identifier associated with the requested information, (2) determining if access to the information is restricted, (3) identifying and/or naming the user that is requesting the information; (4) obtaining the user's verification information, (5) verifying the user's access rights, and (6) providing the information to

1   the verified user.  Beyond the access control function, the claim has no "purpose" whatsoever.  It

2   does not recite any practical use or application of the identifiers except for the sake of access

3   control.  Thus, the "character as a whole" of the claim is controlling access to information using

4   unique identifiers.  *See Elec. Power*, 830 F.3d at 1353-54.

5       The specification of the '151 Patent likewise confirms that this is the focus of Asserted

6   Claim 12.  For instance, the patent describes the method of Claim 12 in the "Summary" section of

7   the specification as "using at least one computer to effect access to information" using the steps

8   identified above, which do not recite anything but the generic use of identifiers to control access to

9   data.  *See* '151 Patent at 4:65-5:14.

10      The idea of controlling access with unique identifiers, such as content-based identifiers, is

11  abstract under *Alice* Step one.  In *PersonalWeb*, the Federal Circuit affirmed this Court's

12  observation that the function of "controlling access to data items" is abstract.  8 F.4th at 1316

13  (affirming this Court's ruling that claims directed to "using a known, content-based identifier to

14  control access to data" are invalid under Section 101; finding that the "function[] of [controlling

15  access to data items] [is a] mental process[] that can be performed in the human mind or using a

16  pencil and paper—a telltale sign of abstraction" and "a computer environment … does not

17  transfigure [that] idea out of the realm of abstraction." (internal quotations omitted)).  In *Protegrity*

18  *USA, Inc. v. Netskope, Inc.*, 2015 WL 6126599 (N.D. Cal., Oct. 19, 2015), this Court also found

19  abstract the idea of "limiting access to information based on specified criteria."  *Id.* at *6 (holding

20  that claims over "types of access limitations" are directed to abstract ideas that "substantially

21  predate modern computers, arising in contexts such as physical security and access policies").  In

22  *Ericsson Inc. v. TCL Communication Technology Holdings Limited*, 955 F.3d 1317 (Fed. Cir.

23  2020), the Federal Circuit similarly found claims unpatentable "directed to the abstract idea of

24  controlling access to, or limiting permission to, resources."  *Id.* at 1328 ("[c]ontrolling access to

25  resources … is pervasive in human activity, whether in libraries (loaning materials only to card-

26  holding members), office buildings (allowing certain employees entrance to only certain floors), or

27  banks (offering or denying loans to applicants based on suitability and intended use).").

28

---

1   The use of a unique identifier for the information resource to be accessed, including a

2   content-based identifier, is equally abstract.  In *PersonalWeb*, the Federal Circuit specifically

3   emphasized that "the use of a content-based identifier … was abstract" and that "[g]enerating such

4   identifiers via a known algorithm is no less abstract."  8 F.4th at 1316.  In *Secured Mail Solutions*

5   *LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017), the Federal Circuit similarly described

6   a "unique identifier … to communicat[e] information about the mail object, i.e., the sender,

7   recipient, and contents of the mail object" as abstract.  *Id.* at 910-11 (finding unpatentable claims

8   describing use of unique content-based identifiers on envelopes or parcels).  In *OpenTV, Inc. v.*

9   *Apple, Inc.*, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015), this Court likewise found unpatentable

10  claims based on the "abstract idea of compiling, organizing, and transmitting information, using

11  identification codes as shorthand for information."  *Id.* at *3. ("claims are drawn to the abstract idea

12  of using identification codes to solve [security] this age-old problem").

13  The idea of identifying or naming a user with a unique identifier is also abstract.  *See Bridge*

14  *& Post Inc. v. Verizon Communications, Inc.*, 319 F. Supp. 3d 818, 822 (E.D. Va. 2018), *aff'd*, 778

15  F. App'x 882 (Fed. Cir. 2019) (finding unpatentable claims including "determining user

16  information for a user" and "generating a user identifier for the user from the determined user

17  information"); *see also Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016-17 (Fed.

18  Cir. 2017) ("systems and methods that control access to protected computer resources by

19  authenticating identity data [of a user]" are directed to an abstract idea); *West View Research, LLC*

20  *v. Bayerische Motoren Werke AG*, 226 F. Supp. 3d 1071, 1078 (S.D. Cal. 2016) ("[t]he concept of

21  identifying a system user and then delivering user-specific content to that user's … device is an

22  abstract idea.").

23  Consistent with this principle, courts have consistently confirmed that the abstract idea of

24  "providing restricted access to resources," *Prism*, 696 F. App'x at 1017, and "conditioning and

25  controlling access to data," *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 982 (Fed. Cir. 2017),

26  are <u>not</u> patentable.  Stringing together in asserted Claim 12 one abstract idea to another—i.e., using

27  content identifiers and user identifiers to control access to data—does not save the claim under

28  *Alice* Step one.  *See PersonalWeb*, 8 F.4th at1317-18 (affirming this Court's ruling that claims

1  "directed to the use of an algorithm-generated content-based identifier to perform the … function[]

2  … [of] controlling access to data items" were unpatentable and finding such "claims as a whole …

3  are directed to a medley of mental processes that, taken together, amount only to a multistep mental

4  process").

5      Indeed, the idea of using identifiers to control access to information is an age-old human

6  endeavor and can be found in innumerable examples of activities in day-to-day life.  For example,

7  libraries have long assigned unique identifiers to books, including based on the contents, and to

8  patrons, for example, in the form of membership cards.  Librarians determine if access to a

9  requested book is restricted (for example, belonging to a collection of rare and antiquarian books),

10  and verify if the patron requesting the book has authorized access using his or her identifier:

| Claim Language | The Library Example |
|---|---|
| 12. A method of using at least one computer to effect access to information, comprising: | |
| effecting determination of if information an entity desires to access (desired information) on the entity's access device (entity device) has an unique, persistently accessible, and universal name identifier (UPUNI) embedded within the desired information; | A librarian determines the index number assigned to a requested book; |
| effecting determination of if the desired information is inaccessible; | the librarian determines if access to the requested book is restricted (because it is housed in a rare book collection, for example); |
| effecting determination of if there exists an UPUNI that represents the entity (E-UPUNI); | the librarian determines if the patron requesting the book has a membership number; |
| effecting the generation of the E-UPUNI, if the entity is un-represented by an UPUNI; | if not, the patron registers with the membership management system of the library, which generates a membership number for the patron; |
| effecting the resolution of the entity device to the desired information's UPUNI (DI-UPUNI); | the librarian looks up the location of the requested book based on the index number; |
| effecting the provision of entity verification information; | the librarian obtains the patron's access verification information; |

| Claim Language | The Library Example |
|---|---|
| effecting verification of the entity's identity and access rights to the desired content with the provided entity verification information (entity verification); | the librarian verifies the patron's identity and access rights to the requested book based on his/her access verification information; |
| effecting provision of access credentials, if the entity's identity and access rights to the desired content are verified. | the librarian provides a key to the patron to unlock the case or cabinet storing the requested rare book. |

Even more generally, governments and corporations have likewise restricted access to classified or confidential information by allowing only certain individuals within the organizations (identified by unique employee numbers, for example) to have access to certain documents (identified by unique document numbers).  Such a "fundamental [and] long prevalent" concept is a quintessential abstract idea.  *Alice*, 573 U.S. at 219.

Asserted Claim 12 is also abstract for the independent reason that it does not recite any improvements to computer functionality.  Instead, Claim 12 recites only steps to "<u>effect</u>" certain desired results for controlling access to data with the use of identifiers, without specifying at all how the desired results are achieved.  In other words, the recited "computer" is merely a generic tool to carry out the described functions.  Claims written in result-based functional language, reciting no particular way of performing a function, like asserted Claim 12, are patent ineligible. *See Supercell*, 2018 WL 1609584, at *6 (Gonzalez Rogers, J.) (finding claims abstract when "not directed to an improvement in computer functionality but merely recite generalized steps to be performed on a computer using conventional computer activity," because "to be patentable, claims must sufficiently describe how to achieve an improvement in computer technology in a non-abstract way") (internal citation and quotation omitted); *ChargePoint*, 920 F.3d at 769-70 (ruling claims abstract when "drafted in such a result-oriented way that they amount[] to encompassing the 'principle in the abstract' no matter how implemented") (citation omitted and emphasis added); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329, 1334–35, 1337–38 (Fed. Cir. 2017) (finding a claim abstract because it "requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe *how* to achieve these results in a non-abstract way") (emphasis added).

2.      **The Asserted Claim of the '151 Patent Lacks Any "Inventive Concept"
as Required Under _Alice_ Step Two.**

Asserted Claim 12 of the '151 Patent also contains no "inventive concept" sufficient to transform the abstract idea into patent-eligible subject matter.

"To save a patent at [_Alice_] step two, an inventive concept must be evident in the claims." _RecogniCorp, LLC v. Nintendo Co_., 855 F.3d 1322, 1327 (Fed. Cir. 2017).  Thus, "[f]or the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"  _Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n_, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014).

The specification of the '151 Patent, however, repeatedly emphasizes that all components and functions recited by its claims were known and conventional, as explained above.  _See_ '151 Patent at 3:37-4:41 (acknowledging that using unique content identifiers and controlling access to information, including with DRM systems, was known and "[c]ommon" in the art); 11:38-43 ("[p]referably, the cryptographic module allows conventional cryptographic techniques such as, but not limited to: digital certificates (e.g., X.509 authentication framework), digital signatures, dual signatures, enveloping, password access protection, public key management, and/or the like."); _id._ at 10:45-60 ("[p]referably, the database is a conventional, fault tolerant, relational, scalable, secure database … Alternatively, the DOIAT database may be implemented using various standard data-structures"); _id._ at 8:22-23 ("[a] storage device 114 may be any conventional computer system storage."); _id._ at 8:64-65 ("[t]he operating system preferably is a conventional product"); _id._ at 9:21-22 ("[t]he information server may be a conventional Internet information server"); _id._ at 6:58-61 ("The CPU interacts with memory through signal passing through conductive conduits to execute stored program code according to conventional data processing techniques."); _id._ at 7:9-10 ("Conventional slot architectures may be employed"); _id._ at 9:58-59 ("[p]referably, the user interface is a conventional graphic user interface").

This is diametrically opposed to what the second prong of the _Alice_ test requires—i.e., something "significantly more" than the abstract idea that limits the claim to a particular,

1    unconventional implementation.  *See Alice*, 573 U.S. at 223 ("the mere recitation of a generic

2    computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. … Nor

3    is limiting the use of an abstract idea 'to a particular technological environment.'"); *see also Blue*

4    *Spike, LLC v. Google Inc.*, No. 14-CV-01650, 2015 WL 5260506, at *1, *6 (N.D. Cal. Sept. 8,

5    2015) ("[m]erely adding limitations involving the use of general purpose computer components to

6    an otherwise abstract concept does not constitute an inventive concept sufficient to save a claim

7    from invalidity") (citation omitted).

8         The use of a "unique, persistently accessible, and universal name identifier (UPNI)" or

9    "UPNI that represents the entity (E-UPNI)" does not supply the necessary inventive concept.

10   As noted above with respect to *Alice* step one, the use of such identifiers is itself an abstract idea.

11   Indeed, the '151 Patent expressly acknowledges that the use and generation of such identifiers was

12   well-known and conventional before the alleged date of invention.  *See* '151 Patent at 3:37-64

13   ("Background" section) ("The Corporation for National Research Initiatives has created and

14   implemented a new means of naming and locating information, called the Handle System. … One

15   common type of Handle is known as a Digital Object Identifier (DOI).").

16        Similarly, the remaining limitations of the asserted claim recite well-understood, routine,

17   conventional and non-inventive activities that are not material for purposes of Section 101, including:

18   • *effecting a determination*: "effecting determination of if information … has

19        an unique, persistently accessible, and universal name identifier (UPNI),"

20        "effecting determination of if the desired information is inaccessible,"

21        "effecting determination of if there exists an UPNI that represents the entity

22        (E-UPNI)";

23   • *providing data*: "effecting the resolution of the entity device," "effecting the

24        provision of entity verification information," "effecting provision of access

25        credentials."

26   These activities are routinely practiced in data management.  As in virtually every case in which

27   patents using computers as tools have been invalidated, the claim relies entirely on off-the-shelf

28   "well-understood, routine, or conventional" technology.  *See, e.g.*, *In re TLI Commc'ns, LLC Patent*

1   *Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("[For the second step of *Alice* to be satisfied,] the

2   components must involve more than [the] performance of well-understood, routine, conventional

3   activities previously known in the industry."); *see also Supercell*, 2018 WL 1609584, at *7

4   (Gonzalez Rogers, J.) ("When claims like the Asserted Claims are directed to an abstract idea and

5   merely require generic computer implementation, they do not move into section 101 eligibility

6   territory" (quotation omitted)).  And, as explained above for *Alice* step one, these are abstract steps

7   that recite no particular or limiting implementation—they are abstract steps that have traditionally

8   been performed in the real world.  These steps cannot provide an inventive concept.

9   Nor does consideration of the claim limitations as an ordered combination transform their

10  nature.  The limitations (considered together) do not add anything material.  The order of the

11  claimed steps to effect access verification —(1) determining the unique identifier associated with

12  the requested information, (2) determining if access to the information is restricted, (3) identifying

13  and/or naming the user that is requesting the information; (4) obtaining the user's verification

14  information, (5) verifying the user's access rights, and (6) providing the information to the verified

15  user—was known and conventional.  Moreover, the steps are logically sequenced as required for

16  access verification to operate.  For example, verifying access before obtaining the identity of a user

17  would defeat the very purpose.  Thus, the ordered combination does not provide an inventive

18  concept.  *See, e.g.*, *PersonalWeb*, 8 F.4th 1310 at 1316-17 (concluding that there was nothing

19  inventive about the claim details of receiving a request including data and in response to the

20  request, determining whether access to data is authorized and allowing or not allowing access based

21  on the determination, individually and as an ordered combination, to confer patent eligibility on an

22  otherwise abstract idea).

23  **3.   No Questions Of Fact Preclude Dismissal Under Section 101.**

24  Patent eligibility is appropriate to determine on a motion to dismiss where, as here, there are

25  no genuine factual disputes regarding whether the claimed invention is "well-understood, routine,

26  and conventional."  *Berkheimer*, 881 F.3d at 1368; *Aatrix Software*, 882 F.3d at 1125.  The

27  Complaint is devoid of any factual allegation that the claimed invention is unconventional.

28

1    Any such allegation would be untenable, in any event, because asserted Claim 12 is entirely

2    directed to the abstract idea of controlling access to information with unique identifiers using

3    admittedly conventional computer components and techniques.  Where, as here, "the claims and

4    specification" confirm the lack of an inventive concept, dismissal under Rule 12(b)(6) is proper,

5    regardless of allegations in the Complaint or purported extrinsic evidence to the contrary.  *See*

6    *ChargePoint*, 920 F.3d at 776 (affirming dismissal under Rule 12(b)(6)); *see also Athena*

7    *Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 755-56 (Fed. Cir. 2019), *cert.*

8    *denied*, 140 S. Ct. 855 (2020) (ruling that the district court properly dismissed the complaint

9    because plaintiff's "expert declaration made allegations inconsistent with the [patent-in-suit]").

10    **B.    The Complaints Are Devoid of Factual Support.**

11    In the alternative, to the extent the Court does not dismiss the Complaints under Section

12    101, the Court should nevertheless dismiss the respective Complaints against the Defendants

13    because they fail to sufficiently to plead infringement of each limitation of Claim 12.

14    The respective Complaints themselves contain nothing more than legal conclusions parroted

15    from the relevant statutes.  *See* Compl. ¶¶ 13-14.  Although Plaintiff asserts that the claim charts

16    attached to the Complaints as Exhibit B show that the Defendants' accused systems infringe all of the

17    limitations of Claim 12, *id.* at ¶ 15, they do not.  Each chart merely repeats the claim language with

18    minor alterations, and presents images of Defendants' websites without explaining how those images

19    purportedly show how each limitation of Claim 12 is met.  *See Kim v. Green Tea Ideas, Inc.*, 2018

20    WL 1172998, at *2-*3 (E.D. Va. 2018) (dismissing infringement claim where patentee failed to

21    adequately plead which features of the allegedly infringing product correspond to the limitations in

22    asserted patent claim, finding that merely providing a photo of the accused product and then reciting

23    the patent language was not sufficient to give fair notice of the infringement claims).

24    In particular, the claim charts attached as Exhibit B to the Complaints fail to show how the

25    accused systems allegedly infringe many of the limitations in Claim 12.  For example, Claim 12

26    requires:

27        • "an unique, persistently accessible, and universal name identifier (UPUNI) <u>embedded</u>

28            within the desired information";

- the step of "effecting <u>determination of if [the desired] information … has</u>" a UPUNI;

- the step of "effecting <u>determination of if there exists an UPUNI that represents the entity (E-UPUNI)</u>";

- the step of "effecting <u>generation of the E-UPUNI</u>, if the entity is un-represented by an UPUNI"; and

- the step of "effecting the <u>resolution of the entity device</u> to the desired information's UPUNI (DI-UPUNI)."

(Emphasis added.)  None of the images in Exhibit B to the Complaints shows a UPUNI <u>embedded</u> in a specific information resource, any process to determine whether the information has a UPUNI, any process to determine whether the party seeking access to the information has a E-UPUNI, any mandatory E-UPUNI generation process, and any resolution process relating to a party's specific <u>device</u>.  *See Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018) (dismissing a direct infringement claim because the plaintiff simply broke "the exemplary claim into individual elements with [] screenshots," finding that "screenshots themselves [do not] constitute the requisite factual allegations" and that "Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal* standard is met"); *Mosaic Brands, Inc. v. The Ridge Wallet LLC*, 2020 WL 5640233, at *3-*4 (C.D. Cal. 2020) (dismissing complaint because the claim chart and images included with the complaint failed to plausibly show that several claim limitations were met).

Given these deficiencies, Plaintiff has not provided sufficient factual allegations to meet the *Twombly/Iqbal* standard, and the Complaints should be dismissed for this reason as well.  There is not sufficient detail in the claim charts to identify how the Defendants' accused systems are alleged to meet each limitation of asserted Claim 12.

## V.    CONCLUSION

Because the asserted Claim 12 of the Patent-in-Suit recites an abstract idea with no inventive concept, Defendants Seclore and Digify respectfully request that the Court dismiss these

1  actions with prejudice.  Alternatively, the Court should dismiss the Complaint for failing to plead

2  infringement of Claim 12 sufficiently under the *Twombly/Iqbal* pleading standard.

3  Dated:  January 13, 2022                    Respectfully submitted,

4                                              **PILLSBURY WINTHROP SHAW PITTMAN LLP**

5

6                                              */s/ Christopher Kao*
                                               Christopher Kao (SBN 237716)

7                                              *Attorneys for Defendants*

8                                              *Seclore, Inc. and Digify, Inc.*

1

## <u>CERTIFICATE OF SERVICE</u>

2       The undersigned certifies that on January 13, 2022, the foregoing document was

3 electronically filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT,

4 NORTHERN DISTRICT OF CALIFORNIA, using Court's Electronic Case Filing (ECF) system.

5 The ECF system routinely sends a "Notice of Electronic Filing" to all counsel of record who have

6 consented to accept this notice as service of this document by electronic means.  Any party not

7 receiving the Court's electronic notification will be sent a copy of the foregoing document.

8

9                                             */s/ Christopher Kao*
                                             Christopher Kao

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

Defendants' Motion to Dismiss            21      Case Nos. 21-cv-08504-YGR and 21-cv-08506-YGR